UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| KRISTA MICHELLE RAMOS, | § | |
| Individually, and as Next of Friend of | § | |
| JR, a minor, and as Representative of | § | |
| the Estates of her deceased Children | § | |
| JMR and JIR, minors | § | |
| | § | |
| *Plaintiffs* | § | Case No. 2:21-cv-00099 |
| | § | |
| V. | § | |
| | § | |
| STELLANTIS NORTH AMERICA f/k/a | § | |
| FCA US LLC, f/k/a CHRYSLER | § | |
| GROUP, LLC | § | |
| | § | |
| and | § | |
| | § | |
| BABY TREND, INC. | § | |
| | § | |
| *Defendants* | § | |

## PLAINTIFFS' ORIGINAL PETITION AND JURY DEMAND

NOW COME Plaintiffs, Krista Michelle Ramos, individually and as Next of Friend of JR, and on behalf of the Estates of her deceased children, JMR and JIR, minors (hereinafter "Plaintiffs" and/or "Decedent(s)"), by and through their counsel, Griffin Purnell LLC, and for their cause of action against Defendants, Stellantis North America f/k/a FCA US LLC f/k/a Chrysler Group, LLC and Baby Trend, Inc. states to the Court as follows:

## I.   INTRODUCTION

1.      This case seeks justice for 10-month-old twins JMR and JIR, who on March 6, 2021, were burned alive.

2.      Plaintiffs bring this suit to recover damages for the wrongful deaths of JMR and JIR. The catastrophic damage and loss of life was preventable.

3.      Plaintiffs bring this civil action to recover damages within the jurisdictional limits of this Court including all: (1) General Damages; (2) Special Damages; and (3) Exemplary Damages under Texas law.

4.      Defendants' conduct constituted malice, oppression and fraud which disregarded the lives and safety of others as well as negligence.

5.      Plaintiffs bring claims fully set forth below asserting: (1) design defect; (2) manufacturing defect; (3) strict liability; (4) negligence; (5) gross negligence; and (6) exemplary damages.

6.      Plaintiffs bring these claims against both Defendants.

7.      There are approximately 278,000, vehicle fires annually.  This is 17% of the total number of fires nationally. The number of civilian deaths and injuries from vehicle fires in 2006 were approximately 490.[1]

8.      This claim arises from a fire that engulfed the subject vehicle, a 2013 Chrysler 300, that resulted in the death of JMR and JIR and burn injuries to Krista Ramos.

9.      JMR and JIR died while both were buckled, locked and trapped in Baby Trend's, EZ Flex-loc Infant Car Seat, manufactured by Baby Trend, Inc.

## II.   PARTIES

10.     Plaintiff, Krista Ramos brings this action individually, as the Next of Friend of JR, and as the surviving parent of JMR and JIR. Plaintiffs bring this action for wrongful death as the surviving parent pursuant to TEX. CIV. PRAC. & REM. CODE §71.002(a) §71.004(a)-(b), §71.021(b), and all other applicable laws.

---

[1] National Fire Protection Association 556 *Guide on Methods for Evaluating Fire Hazards to Occupants of Passenger Road Vehicles* §5.1.2 (2020).

11.     Plaintiff, Krista Ramos lives in Corpus Christi, Texas, and is subject to the jurisdiction of this Court, and is deemed to be a resident of the State of Texas for purposes of venue and jurisdiction.

12.     Krista Ramos, as Next of Friend of JR, a minor plaintiff, lives in Corpus Christi, Texas, and is subject to the jurisdiction of this Court, and is deemed to be a resident of the State of Texas for purposes of venue and jurisdiction.

13.     Decedents, JMR and JIR, both minors, lived in Corpus Christi, Texas and were both residing there at the time of their deaths.

14.     Defendant, Stellantis North American f/k/a FCA US f/k/a Chrysler Group, LLC (hereinafter "Chrysler"), is a multinational automotive manufacturer with its headquarters in Amsterdam, the Netherlands. It is organized and incorporated under the laws of Delaware, with its principal place of business located at 1000 Chrysler Drive, Auburn Hills, Michigan 48326. Chrysler may be served with process by serving its registered agent, The Corporation Company located at 229 Brookwood Drive, Suite 14, South Lyon, Michigan 48178. On December 16, 2014, the parent corporation of Chrysler, Fiat Chrysler Automobiles N.V., caused the name of the Defendant Chrysler to be changed to "FCA US." All acts and omissions of the Defendant as described herein were done by its agents, servants, employees and/or owners, acting in the course and scope of its respective agencies, services, employments and/or ownership.

15.     Defendant, Baby Trend, Inc. (hereinafter "Baby Trend"), is organized and incorporated under the laws of California, with its principal place of business located at 13048 Valley Blvd., Fontana, California 92335. Baby Trend may be served with process by serving its registered agent, Shuyi Li at 13048 Valley Blvd., Fontana, California 92335. All acts and omissions of the Defendant as described herein were done by its agents, servants, employees

Griffin Purnell LLC
615 North Upper Broadway, Suite 900
Corpus Christi, Texas 78401

and/or owners, acting in the course and scope of its respective agencies, services, employments and/or ownership.

### III.    JURISDICTION & VENUE

16.    This Court has subject matter original jurisdiction through diversity of citizenship pursuant to 28 U.S.C. §1332(a) because the Plaintiffs are citizens of Texas, the named Defendants are citizens of different states and the amount in controversy exceeds the sum of value of $75,000.00, exclusive of interest and costs.

17.    This Court also has specific jurisdiction over all Defendants because they purposefully availed themselves of the privilege of conducting business in the State of Texas and established minimum contacts sufficient to confer jurisdiction over these Defendants, and the assumption of jurisdiction over Defendants will not offend traditional notions of fair play and substantial justice and is consistent with constitutional requirements of due process.

18.    Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) and 18 U.S.C. §1965 (a) because a substantial part of the events or omissions giving rise to the claim occurred in this District and each Defendant transacts business affairs and conducts activity that gave rise to the claim of relief in this District.

### IV.    FACTUAL BACKGROUND

19.    On Saturday, March 6, 2021, Krista Ramos was driving from her home in Corpus Christi, Texas to visit her family in Orange Grove, Texas.

20.    Plaintiffs were all traveling in a Black 2013 Chrysler 300, four door sedan with Texas license plate MVT1586. The subject vehicle's vehicle identification number is 2C3CCAAG1DH588549.

21.    Krista Ramos was traveling with three of her five children, JMR, JIR, and JR.

22.     JMR, a female, was born in 2020, in Nueces County, Texas. Her sister, JIR, was also born in 2020, in Nueces County, Texas. They have another sister born on the same date who, thankfully, was not in the car at the time of this tragic incident.

23.     The father of JMR and JIR, passed away on December 28, 2019.

24.     JMR, JIR, and JR were all seated in the rear of the vehicle.

25.     JMR and JIR, 10-month-old twin girls, were both seated in rear facing Baby Trend, EZ Flex-loc Infant Car Seats.



Figure 1.[2]

26.     Baby Trend sells products to retail stores and other distributors in the State of Texas.

27.     The Baby Trend seats were model: CS96A41A which were manufactured in China.

28.     The seats were manufactured on or about November 5, 2019.

29.     Their brother, JR, a 5-year-old boy, was seated in a booster between his sisters.

30.     The weather was clear and road conditions were unremarkable.

---

[2] Image of Baby Trend, EZ Flex-loc Infant Car Seat.

31.     At approximately 12:36 p.m. on March 6, 2021, Krista Ramos' Chrysler 300, left the road. The next several minutes of March 6, 2021, would result in the horrific deaths of two innocent infants, physical injuries, and a lifetime of severe mental and emotional damage.

32.     Upon leaving the road, the subject vehicle broke through a roadside fence at 352 Jennifer Loop in Orange Grove, Texas. The property and the road are virtually level with each other. As a result, there was no drop in elevation that would have caused any damage to the subject vehicle upon leaving the road.

33.     Some reports of the incident indicate that the driver, Krista Ramos, was involved in a medical episode. No doubt, Defendants will attempt to blame Plaintiff for this incident. This position is without merit because the cause of the fire is wholly unrelated to the manner and method by which the car left the road and there was no significant change in the condition of the car when it came to rest prior to the fire starting.

34.     Plaintiffs' damages are not the result of any acts, omissions or conduct of the Plaintiff.



Figure 2.[3]

35.     The car traveled across the front area of the property located at 352 Jennifer Loop in Orange Grove, Texas and ultimately came to rest as a result of a minor collision with a pole located on the East side of the property.[4]

36.     Suddenly and without warning, a fire started under the 2013 Chrysler 300 due to the high dry grass on the property igniting from the heat generated by component parts on the underside of the vehicle.

37.     Upon information and belief, prior to the fire spreading into the passenger compartment, the subject vehicle's windows were up and all doors were shut.

---

[3] Field Diagram (not to scale) of Officer Zachary Sprouse from his report of March 8, 2021.

[4] While the word "collision" and/or "accident" have been used to describe this incident, the force of impact was so *de minims* to be deemed irrelevant. Therefore, this case falls under National Fire Protection Association 556 *Guide on Methods for Evaluating Fire hazards to Occupants of Passenger Road Vehicles* §5.1.3(2) - fires without collision (2020).



Figure 3.[5]

38.     Juan Galan and Pamela Galan, a married couple, are the owners of the property located at 352 Jennifer Loop in Orange Grove, Texas. As good Samaritans, they responded to the scene within seconds of the incident and attempted to render aid to Plaintiffs.

39.     Krista Ramos and JR were able to exit the subject vehicle with the assistance of the good Samaritans present at the scene.

40.     The good Samaritans were unable to access the babies through the back doors of the car, therefore, they attempted to remove the babies by accessing the passenger compartment via the front door of the car and reaching over the front seats.

---

[5] Still from video taken by Pamela Galan during fire on March 6, 2021.

41.     Juan Galan, one of the good Samaritans, tried to remove the infants who were trapped in the back seat of the burning car. He was able to release the chest clip on one of the infant car seats behind the passenger seat, but the Baby Trend, EZ Flex-loc Infant Car Seat center lock was stuck and would not unbuckle.

42.     Additionally, the base release handle on the Baby Trend, EZ Flex-loc Infant Car Seat was located at the foot of the seat, therefore, was not readily accessible or visible to Juan Galan during his efforts to remove the babies from the car.

43.     Juan Galan had to abandon his efforts to save the JMR and JIR when the fire entered the passenger compartment from the luggage compartment and began burning his face.

44.     At approximately 12:44 p.m. firefighters arrived at the scene. Two units (301 and 310) from the Orange Grove Fire Department used water and fire-fighting foam to suppress the fuel vapors that were present in the fire.

45.     At the time the car came to rest, all passengers were properly seated, and seat belted in the car. Krista Ramos was properly seated, and seat belted in the driver's seat. JMR and JIR were both securely restrained in their Baby Trend, EZ Flex-loc Infant Car Seats.

46.     Consumed by the fire engulfing the Chrysler 300, JMR and JIR suffered extreme and conscious shock, terror, fright, physical, mental pain and suffering up until the time of their deaths.

47.     JMR and JIR both died on the scene from injuries caused by the fire.

48.     Several witnesses saw JMR and JIR trapped in their car seats as the fire from the car burned them alive. Among these witnesses were the twins' mother, Krista Ramos and five-year-old brother, JR who stood helplessly in close proximity to the vehicle.

49.     JMR and JIR were so badly burned by the fire that the funeral home required the assistance of the fire fighters to remove them from the car.



Figure 4.[6]

50.     The subsequent postmortem examination of JMR stated that the cause of death was "extensive thermal burns of the third and fourth degree covering over 97% of the total body surface area."[7]

51.     The subsequent postmortem examination of JIR stated that the cause of death was "external thermal burns of third and fourth degree covering head, face, trunk, and extremities involving over 95% of the total body surface area."[8]

52.     Defendant Chrysler designed, manufactured, distributed, marketed and sold the subject 2013 Chrysler 300.

---

[6] Photos taken by Pamela Galan during the removal of the remains of JIR and JMR on March 6, 2021.

[7] Nueces County Medical Examiner Report of Postmortem Examination for JMR from March 8, 2021.

[8] Nueces County Medical Examiner Report of Postmortem Examination for JIR from March 8, 2021.

53. The Chrysler vehicle at issue exhibited several defects that violated common-sense consumer expectations, as well as safety industry practices including but not limited to the size, location, design, and orientation of the subject vehicles rear ventilation flaps. As a result of the design, manufacture, and marketing of the vehicle, it was not crashworthy in that an otherwise survivable incident became deadly.

54. Defendant Baby Trend designed, manufactured, distributed, marketed and sold the subject EZ Flex-loc Infant Car Seat.

55. The design, manufacture and instructions of the Baby Trend products at issue in this case exhibited several defects that violated common-sense consumer expectations, as well as requirements and child safety industry practices. As a result of the design, manufacture, and marketing defects of the car seats, they became deadly traps in a foreseeable post-accident fire.

56. Defendants are jointly and severally liable for those injuries caused to JMR and JIR and/or for the death of JMR and JIR to the extent the jury finds the injuries and or death were proximately caused by the wrongdoing of the Defendants.

## V.      CAUSES OF ACTION

### COUNT 1: CHRYSLER – PRODUCTS LIABILITY – DESIGN DEFECT

57. All of the allegations contained in the previous paragraphs are realleged herein.

58. The Chrysler 300 that Krista Ramos was driving was originally designed, manufactured, and sold by Defendant Chrysler. At the time the vehicle in question was sold, Defendant was in the business of designing, manufacturing, selling, and/or otherwise placing vehicles, such as the one in question, in the stream of commerce.

59. At the time the vehicle in question was designed, manufactured and sold by Defendant it was defective in design and unreasonably dangerous. The defective and unreasonably

dangerous condition of the vehicle in question was a direct and proximate cause of the injuries to Plaintiffs.

60.     The vehicle reached Plaintiffs in the condition expected and intended by Defendants.

61.     Plaintiffs used the vehicle for its intended and foreseeable purpose.

62.     The defects regarding the subject vehicle include but are not limited to the danger posed by the design of the vehicle.

63.     Safer alternative designs existed other than the one used, which were economically and technologically feasible and would have prevented or significantly reduced the risk of accident and/or injury in question without substantially impairing the vehicle's utility.

64.     Further, at the time the vehicle in question was sold, the defective design caused the product to unexpectedly fail to function in a manner reasonably expected by an ordinary consumer. The defective and unreasonably dangerous design of the vehicle was a producing cause of Plaintiffs' injuries.

65.     At the time of the incident, the vehicle was in the same or substantially similar condition as it was at the time when it left Defendants' control and was placed into the stream of commerce.

66.     No mandatory safety standards or regulations adopted and promulgated by the federal government or an agency of the federal government were applicable to the 2013 Chrysler 300 at the time it was manufactured that governed any product risk that caused the accident and/or injuries to Plaintiffs. To the extent Defendants attempt, pursuant to §82.008 of the TEX. CIV. PRAC. & REM. CODE, to rely on any standards or regulations of the federal government, such standards or regulations were inadequate to protect against the risk of accident and/or injuries that occurred

in this incident and/or Defendants withheld or misrepresented information to the government regarding the adequacy of the safety standard at issue.

67.     As a result of the design defects, the fire spread into the passenger compartment at a rate that prevented the occupants from safely exiting the vehicle unharmed in this otherwise survivable event.

68.     As a result of Defendants' conduct, Plaintiffs have been damaged and continue to sustain damages in an amount to be determined by a jury but in an amount exceeding $75,000.00, as a direct and proximate result of the Defendant's conduct.

## <u>COUNT 2</u>: CHRYSLER – PRODUCTS LIABILITY – MANUFACTURING DEFECT

69.     All of the allegations contained in the previous paragraphs are realleged herein.

70.     The vehicle Krista Ramos was driving was originally designed, manufactured, and sold by Defendant. At the time the vehicle in question was sold, Defendant was in the business of designing, manufacturing, selling, and/or otherwise placing vehicle and/or seatbelt components, such as those in question, in the stream of commerce.

71.     The vehicle reached Plaintiffs in the condition expected and intended by Defendant.

72.     Plaintiffs used the vehicle for its intended and foreseeable purpose.

73.     When it left control of Defendant, defects in the manufacture of the vehicle and/or components rendered it defective and unreasonably dangerous in that it had a defect that was prone to fail in a foreseeable accident.

74.     The defective manufacture of the vehicle directly and proximately caused Plaintiffs' injuries, damages and deaths.

75.     As a result of Defendants' conduct, Plaintiffs have been damaged and continue to sustain damages in an amount to be determined by a jury but in an amount exceeding $75,000.00,

as a direct and proximate result of the Defendants' conduct.

## COUNT 3: CHRYSLER – STRICT LIABILITY

76.     All of the allegations contained in the previous paragraphs are realleged herein.

77.     The vehicle Krista Ramos was driving was originally designed, manufactured, and sold by Defendant Chrysler. At the time the vehicle in question was sold, Defendant was in the business of designing, manufacturing, testing, assembling, monitoring, selling, and/or otherwise placing vehicles and/or seatbelt components into the stream of commerce, including the subject vehicle and its defective condition which was the proximate cause of the subject incident.

78.     The vehicle reached Plaintiffs in the condition expected and intended by Defendant.

79.     Plaintiffs used the vehicle for its intended and foreseeable purpose.

80.     Due to the vehicle's design and manufacture, the vehicle was not reasonably crashworthy; JMR and JIR were trapped inside and killed. The failure to appropriately design and construct the vehicle, which caused the vehicle's internal failure, were the direct and proximate cause of Plaintiffs' injuries and damages. As such, Defendant should be held strictly liable.

81.     Defendant placed the defective vehicle into the stream of commerce and expected or could reasonably foresee the use of said vehicle by individuals, such as Plaintiffs, in the condition in which the subject vehicle was designed, manufactured and sold.

82.     The subject vehicle was designed, manufactured and assembled so that the defective condition was undiscoverable until such time as an accident occurred.

83.     The defective condition of the subject vehicle was not observable by Plaintiffs, who relied upon Defendant to design, test, manufacture, sell and deliver the subject vehicle in a condition fit for use for the purposes intended.

84.     As a direct and proximate result of the failure of Defendant to properly design, test, manufacture, sell and deliver the subject vehicle, JMR and JIR were killed.

85.     As a result of Defendants' conduct, Plaintiffs have been damaged and continue to sustain damages in an amount to be determined by a jury but in an amount exceeding $75,000.00, as a direct and proximate result of the Defendants' conduct.

## COUNT 4: CHRYSLER – NEGLIGENCE

86.     All of the allegations contained in the previous paragraphs are realleged herein.

87.     Defendant Chrysler committed acts of omission and commission, which collectively and severally constituted negligence, and that negligence proximately caused Plaintiffs' injuries and Plaintiffs' damages.

88.     Defendants' acts or omissions constituting negligence include,

> (a) failing to properly design the vehicle;
>
> (b) failing to properly manufacture the vehicle;
>
> (c) failing to adequately test the vehicle;
>
> (d) failing to recall the vehicle or, alternatively, to warn consumers of a known danger/defect in the vehicle;
>
> (e) failing to disclose post-sale information known about dangers or defects in the vehicle;
>
> (f) concealing known dangers associated with the vehicle;
>
> (g) failing to meet or exceed internal corporate guidelines;
>
> (h) failing to comply with the standards of care applicable in the automotive industry concerning crash worthiness; and

Griffin Purnell LLC
615 North Upper Broadway, Suite 900
Corpus Christi, Texas 78401

(i) failing to design the product so the passenger compartment would adequately protect the occupants during a foreseeable accident.

89.     As a result of Defendants' conduct, Plaintiffs have been damaged and continue to sustain damages in an amount to be determined by a jury but in an amount exceeding $75,000.00, as a direct and proximate result of the Defendant's conduct.

## COUNT 5: CHRYSLER – GROSS NEGLIGENCE

90.     All of the allegations contained in the previous paragraphs are realleged herein.

91.      Defendants committed gross negligence, which was a proximate cause of the deaths of JMR and JIR, and for which Plaintiffs are entitled to recover punitive damages. Defendants acted with conscious disregard to the rights, safety and welfare of Plaintiffs and other users by refusing to incorporate feasible safety features into the vehicle.

92.     As a result of Defendants' conduct, Plaintiffs have been damaged and continue to sustain damages in an amount to be determined by a jury but in an amount exceeding $75,000.00, as a direct and proximate result of the Defendant's conduct.

## COUNT 6: CHRYSLER – EXEMPLARY DAMAGES

93.     All of the allegations contained in the previous paragraphs are realleged herein.

94.     Because Defendant is liable for gross negligence, punitive damages should be assessed against them, as a deterrent to such future bad conduct and as a punishment for their bad acts, in an amount to be determined by the jury.

95.     As a result of Defendants' conduct, Plaintiffs have been damaged and continue to sustain damages in an amount to be determined by a jury but in an amount exceeding $75,000.00, as a direct and proximate result of the Defendants' conduct.

## <u>COUNT 7</u>: BABY TREND – PRODUCTS LIABILITY – DESIGN DEFECT

96.     All of the allegations contained in the previous paragraphs are realleged herein.

97.     The car seats JIR and JMR were seated in were originally designed, manufactured, and sold by Defendant Baby Trend. At the time the seats in question were sold, Defendant was in the business of designing, manufacturing, selling, and/or otherwise placing car seats, such as the ones in question, in the stream of commerce.

98.     The car seats in question were defective in design and unreasonably dangerous at the time Defendant designed, manufactured, and sold them. The defective and unreasonably dangerous condition of the car seats in question was a direct and proximate cause of the injuries to Plaintiffs.

99.     The car seats reached Plaintiffs in the condition expected and intended by Defendants.

100.    Plaintiffs used the car seats for their intended and foreseeable purpose.

101.    The defects regarding the subject car seats include but are not limited to the danger posed by the design of the center buckle and base release handle.

102.    Safer alternative designs existed other than the one used, which were economically and technologically feasible and would have prevented or significantly reduced the risk of accident and/or injury in question without substantially impairing the car seats' utility.

103.    Further, at the time the car seats in question were sold, the defective design caused the product to unexpectedly fail to function in a manner reasonably expected by an ordinary consumer. The defective and unreasonably dangerous design of the car seats was a producing cause of Plaintiffs' injuries.

104.   At the time of the incident, the car seats were in the same or substantially similar condition as they were at the time when it left Defendant's control and was placed into the stream of commerce.

105.   As a result of Defendants' conduct, Plaintiffs have been damaged and continue to sustain damages in an amount to be determined by a jury but in an amount exceeding $75,000.00, as a direct and proximate result of the Defendants' conduct.

### <u>COUNT 8</u>: BABY TREND – PRODUCTS LIABILITY – MANUFACTURING DEFECT

106.   All of the allegations contained in the previous paragraphs are realleged herein.

107.   The car seats JIR and JMR were seated in were originally designed, manufactured, and sold by Defendant Baby Trend. At the time the seats in question were sold, Defendant was in the business of designing, manufacturing, selling, and/or otherwise placing car seats, such as the ones in question, in the stream of commerce.

108.   The car seats reached Plaintiffs in the condition expected and intended by Defendant.

109.   Plaintiffs used the car seats for their intended and foreseeable purpose.

110.   When they left control of Defendant, defects in the manufacture of the car seats and/or components rendered them defective and unreasonably dangerous in that they had defects that made the car seats prone to fail in a foreseeable accident. Specifically, the defects made it impossible to remove the children from the seats, and therefore the car, in the face of an emergency.

111.   The defective manufacture of the car seats directly and proximately caused Plaintiffs' injuries, damages and deaths.

112.   As a result of Defendants' conduct, Plaintiffs have been damaged and continue to sustain damages in an amount to be determined by a jury but in an amount exceeding $75,000.00,

as a direct and proximate result of the Defendants' conduct.

<u>**COUNT 9: BABY TREND – STRICT LIABILITY**</u>

113.     All of the allegations contained in the previous paragraphs are realleged herein.

114.     The car seats JIR and JMR were seated in were originally designed, manufactured, and sold by Defendant Baby Trend. At the time the seats in question were sold, Defendant was in the business of designing, manufacturing, selling, and/or otherwise placing car seats, such as the ones in question, in the stream of commerce.

115.     At the time the car seats in question were designed, manufactured and sold by Defendant they were defective in design and unreasonably dangerous. The defective and unreasonably dangerous condition of the car seats in question was a direct and proximate cause of the injuries to Plaintiffs.

116.     The car seats reached Plaintiffs in the condition expected and intended by Defendant.

117.     Due to the car seats' design and manufacture, the car seats were not reasonably crashworthy; JMR and JIR were trapped inside and killed. The failure to appropriately design and construct the car seats, was the direct and proximate cause of Plaintiffs' injuries and damages. As such, Defendant should be held strictly liable.

118.     Defendant placed the defective car seats into the stream of commerce and expected or could reasonably foresee the use of said car seats by individuals, such as Plaintiffs, in the condition in which the subject car seats were designed, manufactured, and sold.

119.     The subject car seat was designed, manufactured, and assembled so that the defective condition was undiscoverable until such time as an accident occurred.

120.    The defective condition of the subject car seat was not observable by Plaintiffs, who relied upon Defendants to design, test, manufacture, sell, and deliver the subject car seat in a condition fit for use for the purposes intended.

121.    As a direct and proximate result of the failure of Defendants to properly design, test, manufacture, sell, and deliver the subject car seats, JMR and JIR were killed.

122.    As a result of Defendants' conduct, Plaintiffs have been damaged and continue to sustain damages in an amount to be determined by a jury but in an amount exceeding $75,000.00, as a direct and proximate result of the Defendants' conduct.

### <u>COUNT 10</u>: BABY TREND– NEGLIGENCE

123.    All of the allegations contained in the previous paragraphs are realleged herein.

124.    Defendant Baby Trend committed acts of omission and commission, which collectively and severally constituted negligence, and that negligence proximately caused Plaintiffs' injuries and Plaintiffs' damages.

125.    Defendant's acts or omissions constituting negligence include:

(a) failing to properly design the car seat;

(b) failing to properly manufacture the car seat;

(c) failing to adequately test the car seat;

(d) failing to recall the car seat or, alternatively, to warn consumers of a known danger/defect in the car seat;

(e) failing to disclose post-sale information known about dangers or defects in the car seat;

(f) concealing known dangers associated with the car seat;

(g) failing to meet or exceed internal corporate guidelines;

(h) failing to design the product so its seat belt assembly system would adequately protect the babies during and after a foreseeable accident.

126.    As a result of Defendant's conduct, Plaintiffs have been damaged and continue to sustain damages in an amount to be determined by a jury but in an amount exceeding $75,000.00, as a direct and proximate result of the Defendant's conduct.

## COUNT 11: BABY TREND – GROSS NEGLIGENCE

127.    All of the allegations contained in the previous paragraphs are realleged herein.

128.     Defendant Baby Trend committed gross negligence, which was a proximate cause of the deaths of JMR and JIR, and for which Plaintiffs are entitled to recover punitive damages. Defendant acted with conscious disregard to the rights, safety and welfare of Plaintiffs and other users by refusing to incorporate feasible safety features into the car seats.

129.    As a result of Defendant's conduct, Plaintiffs have been damaged and continue to sustain damages in an amount to be determined by a jury but in an amount exceeding $75,000.00, as a direct and proximate result of the Defendant's conduct.

## COUNT 12: BABY TREND – EXEMPLARY DAMAGES

130.    All of the allegations contained in the previous paragraphs are realleged herein.

131.     Because Defendant Baby Trend is liable for gross negligence, punitive damages should be assessed against it as a deterrent to such future bad conduct and as a punishment for their bad acts, in an amount to be determined by the jury.

132.    As a result of Defendant's conduct, Plaintiffs have been damaged and continue to sustain damages in an amount to be determined by a jury but in an amount exceeding $75,000.00, as a direct and proximate result of the Defendant's conduct.

## VI.      RESERVATION OF RIGHTS

133.     Plaintiffs reserve the right to prove the amount of damages at trial. Plaintiffs reserve the right to amend its Petition to add or remove counts upon further discovery and as its investigation continues.

## VII.    JURY DEMAND

134.     Pursuant to Federal Rule of Civil Procedure 38(c), Plaintiffs hereby requests that all causes of action alleged herein be tried before a properly impaneled jury.

## VIII.   PRAYER FOR RELIEF – DAMAGES

135.     The conduct of the Defendants, as alleged hereinabove, was a direct, proximate and producing cause of the damages to Plaintiffs and of the following general and special damages including:

(a) Damages to punish Defendants for proximately causing physical pain and mental anguish sustained by JMR;

(b) Physical pain and mental anguish sustained by JMR;

(c) The untimely and wrongful death of JMR;

(d) Damages to punish Defendants for proximately causing physical pain and mental anguish sustained by JIR;

(e) Physical pain and mental anguish sustained by JIR;

(f) The untimely and wrongful death of JIR;

(g) Bystander damages for the mental anguish sustained by JR as he personally witnessed the death of his sisters;

(h) Bystander damages for the mental anguish sustained by Krista Ramos as she personally witnessed the death of her daughters;

(i)  Physical pain and mental anguish sustained by Krista Ramos;

(j)  Special damages for all expenses, funeral expenses and property damage incurred on behalf of Plaintiffs;

(k)  Loss of consortium sustained by Krista Ramos for the wrongful death of JMR;

(l)  Loss of consortium sustained by Krista Ramos for the wrongful death of JIR;

(m) Enter judgement against Defendants, jointly and severally, awarding Plaintiff damages in an amount to be determined at trial and their costs and reasonable attorney's fees including, compensatory damages in an amount sufficient to fairly and completely compensate it for all damages; and

(n)  Special damages for all medical expenses, funeral expenses and property damage incurred on behalf of Plaintiffs;

(o)  punitive damages; and

(p)  attorney's fees; and

(q)  prejudgment and post judgment interest, costs, and disbursements;

(r)  Any and all other recoverable personal injury, survival, and/or wrongful death damages for Decedent and Decedent's heirs; and

(s)  such and further relief at law or in equity as this Court may deem just and appropriate.

**WHEREFORE, PREMISES CONSIDERED**, Plaintiffs demand that the Defendants be cited to appear and answer herein.  Upon final judgment against the Defendants, and each of them, jointly and severally, awarding Plaintiffs damages in an amount to be determined at trial and their costs and reasonable attorney's fees including, compensatory damages in an amount sufficient to fairly and completely compensate it for all damages listed herein and such and further relief at law

or in equity as this Court may deem just and appropriate.

Dated: May 21, 2021                    Respectfully submitted,

                                       GRIFFIN PURNELL LLC

                                       By: */s/ Simon B. Purnell*
                                       SIMON B. PURNELL (attorney-in-charge)
                                       TX State Bar No. 24003889
                                       SDTX Bar No. 23509
                                       simon@griffinpurnell.com

                                       DANIEL R. GRIFFIN
                                       TX State Bar No: 24118060
                                       SDTX Bar No. 3656581
                                       dan@griffinpurnell.com

                                       CHARLES E. HARDY JR.
                                       TX State Bar No. 24107661
                                       chase@griffinpurnell.com

                                       GRIFFIN PURNELL LLC
                                       615 N. Upper Broadway, Suite 900
                                       Corpus Christi, TX 78401
                                       Telephone: (361) 500-2804

                                       ***Attorneys for Plaintiffs***

## CERTIFICATE OF SERVICE

The undersigned certifies that on this 21st day of May, 2021, a true and correct copy of the foregoing document was filed electronically with the Court's ECF system for service to all counsel of record.

                                       GRIFFIN PURNELL LLC

                                       By: */s/ Simon B. Purnell*